UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
AMERICAN EMPIRE SURPLUS LINES
INSURANCE COMPANY,                                      Docket No.:

                     Plaintiff,

  -against-                                              **COMPLAINT**

EM & EM CHIMNEY & MASONRY REPAIR, INC.,

                     Defendant.
---------------------------------------------------------------------X

Plaintiff, American Empire Surplus Lines Insurance Company ("American Empire"), by its attorneys, L'Abbate, Balkan, Colavita & Contini, L.L.P., as and for its Complaint against the defendant, EM & EM Chimney & Masonry Repair, Inc. ("EM & EM") alleges, upon information and belief, as follows:

## PARTIES

1. Plaintiff, American Empire is an insurance company organized and existing under the laws of the State of Delaware, with its principle place of business in Ohio.

2. Upon information and belief, and at all times relevant, defendant EM & EM was and still is a corporation organized and existing under the laws of the State of New York, with its principle place of business in Nassau County.

## JURISDICTION

3. This action is brought pursuant to 28 U.S.C. § 1332, based upon diversity of citizenship of the parties.

4. The amount in controversy in this action exceeds the sum or value of $75,0000.

5. Venue is proper pursuant to 28 U.S.C. § 1391 as, upon information and belief, EM & EM is a resident of Nassau County and a substantial part of the events giving rise to the claim occurred in Nassau County.

## FACTS

### The 2014 American Empire Policy

6. American Empire issued a Commercial General Liability insurance policy to EM & EM, bearing Policy No. 14CG0184752, for the period of May 22, 2014 to May 22, 2015 (the "2014 Policy").

7. The premium charged for the 2014 Policy was to be computed as a percentage of the gross receipts of EM & EM during the policy period.

8. Based upon an estimate of EM & EM's gross receipts for the policy period, American Empire assigned an Advance Premium to the 2014 Policy in the amount of $300,000. However, the Advance Premium was subject to adjustment if an audit by American Empire revealed that the gross receipts exceeded the initial estimate of the same.

9. In this regard, the 2014 Policy provides, in pertinent part:

SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

\* \* \*

5. **Premium Audit**

   a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

   b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit

>    premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.
>
> c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

* * *

10. The 2014 Policy also contains an endorsement entitled: "Explanatory Policy Premium Endorsement", which provides, in pertinent part:

> The policy conditions relating to premiums shall be amended to incorporate the following:
>
> 1. It is understood and agreed that [the 2014 Policy] is subject to a minimum policy premium as stated in the Declarations. If the policy remains in force until the expiration date of the policy, this minimum policy premium shall apply unless the audit condition of this policy develops a greater premium. In no event shall the premium be less than the minimum policy premium should the policy remain effective the complete policy term.

* * *

11. By way of the Common Policy Conditions, EM & EM "[i]s responsible for the payment of all premiums...."

### The 2014 Policy Premium Audit

12. On September 8, 2015, Overland Solutions, Inc. ("Overland Solutions"), on behalf of American Empire, performed an audit of the financial records of EM & EM to determine its actual gross receipts during the policy period. However, pursuant to the request of EM & EM, on December 3, 2015 Overland Solutions performed a re-audit of EM & EM's financial records.

13. Pursuant to the re-audit, the additional premium owed under the 2014 Policy was calculated to be $99,336, which is reflected in Endorsement No. 2 to the policy, dated December 10, 2015.

14. Inclusive of the New York Surplus Lines Tax of 3.6% and the Stamping Fee of .2%, American Empire was due $103,110.77 under the 2014 Policy.

**The 2015 American Empire Policy**

15. American Empire also issued a Commercial General Liability insurance policy to EM & EM, bearing Policy No. 15CG0193361, for the period of May 22, 2015 to May 22, 2016 which was cancelled effective February 12, 2016 (the "2015 Policy").

16. As in the case of the 2014 Policy, the premium charged for the 2015 Policy was to be computed as a percentage of EM & EM's gross receipts during the policy period.

17. Based upon an estimate of the same, American Empire assigned an Advance Premium in the amount of $150,000. Again, the Advance Premium was subject to adjustment if an audit by American Empire revealed that the gross receipts exceeded the initial estimate of the same.

18. In this regard, the 2015 Policy provides, in relevant part:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

\* \* \*

5. **Premium Audit**

   a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

    b.    Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

    c.    The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

\* \* \*

19. Identical to the 2014 Policy, the 2015 Policy contains an endorsement entitled: "Explanatory Policy Premium Endorsement", which provides, in pertinent part:

> The policy conditions relating to premiums shall be amended to incorporate the following:
>
> 1. It is understood and agreed that [the 2015 Policy] is subject to a minimum policy premium as stated in the Declarations. If the policy remains in force until the expiration date of the policy, this minimum policy premium shall apply unless the audit condition of this policy develops a greater premium. In no event shall the premium be less than the minimum policy premium should the policy remain effective the complete policy term.

\* \* \*

20. In the event that the 2015 Policy was cancelled prior to its expiration, the Explanatory Policy Premium Endorsement provides, in relevant part:

> 2. It is further agreed should this policy be cancelled prior to its expiration date the premium payable to the Company shall be no less than:
>
>     a.    The minimum earned policy premium set forth in the Declarations; or if greater,

      b.     The actual prorata earned premium, if cancelled by the Company; or

\* \* \*

    3.     The actual prorata earned premium shall be the greater of:

      a.     The premium determined by applying prorata factors to the minimum policy premium; or

      b.     The audit premium for the term the policy was effective.

\* \* \*

This endorsement prevails over any conflicting provisions in the policy.

\* \* \*

    21.    By way of the Common Policy Conditions, EM & EM "[i]s responsible for the payment of all premiums…."

**EM & EM's Failure to Submit to an Audit**

    22.    American Empire and its auditor attempted on numerous occasions to schedule and conduct an audit of EM & EM's business records relative to the 2015 Policy.

    23.    EM & EM has been uncooperative with American Empire and its auditor, however, and, as such, no audit has been performed.

## AS AND FOR A FIRST CAUSE OF ACTION

    24.    American Empire repeats, reiterates and realleges each and every allegation of the preceding paragraphs as set forth herein, verbatim and fully at length.

    25.    As set forth above, the additional premium due under the 2014 Policy is reflected in Endorsement No. 2, dated December 10, 2015.

26. Via a letter dated February 16, 2016, the undersigned, on behalf of American Empire, demanded payment from EM & EM in the amount of $103,110.77, representing the additional premium for the 2014 Policy.

27. To date, however, American Empire has not received payment in the amount owed.

28. As a result of EM & EM's refusal to pay the additional premium and applicable taxes and fees owed, American Empire has been damaged in the amount of $103,110.77, together with interest, costs, disbursements and attorneys' fees.

## AS AND FOR A SECOND CAUSE OF ACTION

29. American Empire repeats, reiterates and realleges each and every allegation of the preceding paragraphs as set forth herein, verbatim and fully at length.

30. As set forth above, although the terms of the 2015 Policy require EM & EM to submit to an audit, notwithstanding its contractual obligations, EM & EM has failed to do so.

31. As a result of EM & EM's failure to submit to an audit, American Empire has been damaged in an amount to be determined at trial.

## AS AND FOR A THIRD CAUSE OF ACTION

32. American Empire repeats, reiterates and realleges each and every allegation of the preceding paragraphs as set forth herein, verbatim and fully at length.

33. Contrary to the terms and conditions of the 2015 Policy, EM & EM has refused and continues to refuse to permit American Empire or its auditor to audit EM & EM's business records.

34. American Empire has no adequate remedy at law to enforce the terms of the 2015 Policy other than the specific performance of the same.

## AS AND FOR A FOURTH CAUSE OF ACTION

35. American Empire repeats, reiterates and realleges each and every allegation of the preceding paragraphs as set forth herein, verbatim and fully at length.

36. EM & EM's failure to pay the additional premium due under the 2014 Policy violates the terms and conditions of the policy.

37. EM & EM's failure to submit to an audit violates the terms and conditions of the 2015 Policy.

38. As such, American Empire respectfully requests that the Court declare that American Empire has no obligation to defend and/or indemnify EM & EM, or any other person or entity seeking coverage under the American Empire policies, relative to any occurrence, offense, claim or suit which has or may be reported to American Empire under the 2014 and 2015 Policies.

## AS AND FOR A FIFTH CAUSE OF ACTION

39. American Empire repeats, reiterates and realleges each and every allegation of the preceding paragraphs as set forth herein, verbatim and fully at length.

40. EM & EM's failure to pay the additional premium due and owing under the 2014 Policy constitutes a breach of EM & EM's duty of good faith and fair dealing owed to American Empire with respect to the 2014 Policy.

41. EM & EM's failure to submit to an audit constitutes a breach of EM & EM's duty of good faith and fair dealing owed to American Empire with respect to the 2014 Policy.

42. As a result of EM & EM's breach of its duty of good faith and fair dealing, American Empire has no obligation to defend and indemnify EM & EM, or any other person or entity seeking coverage under the American Empire policies, relative to any occurrence, offense, claim or suit which has or may be reported to American Empire under the 2014 and 2015 Policies.

**WHEREFORE**, American Empire respectfully requests that:

(a) The Court enter judgment against EM & EM in the sum of $103,110.77, plus interest, for the additional premium, taxes and stamping fees due and owing under the 2014 Policy;

(b) The Court enter judgment against EM & EM for the damages occasioned by its breach of contract in an amount to be determined at trial;

(c) The Court determine and declare that EM & EM shall submit to an audit of its business records pursuant to the terms of the 2015 Policy so that American

Empire may determine whether an additional premium is due and owing under the same;

(d) The Court enter judgment declaring that American Empire has no obligation to defend and/or indemnify EM & EM or any other person or entity seeking coverage under the 2014 and 2015 Policies relative to any occurrence, offense, claim or suit which has or may be reported to American Empire based upon EM & EM's failure to comply with its obligations under the American Empire policies;

(e) The Court enter judgment declaring that American Empire has no obligation to defend and/or indemnify EM & EM or any other person or entity seeking coverage under the 2014 and 2015 Policies relative to any occurrence, offense, claim or suit which has or may be reported to American Empire based upon EM & EM's breach of its duty of good faith and fair dealing;

(f) American Empire be awarded the costs and disbursements of this action; and

  (g) American Empire shall have such other, further and different relief as this Court may deem just and proper.

DATED:  Garden City, New York
     March 30, 2016

              L'ABBATE, BALKAN, COLAVITA
              & CONTINI, L.L.P.

            By: _____
              RICHARD P. BYRNE
              KAITLYN L. LAVARONI
              Attorneys for Plaintiff
              American Empire Surplus Lines
               Insurance Company
              1001 Franklin Avenue
              Garden City, NY 11530
              T:(516) 294-8844
              F:(516) 294-8202